**George B. MENIFEE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 48S00–8603–CR–315.

Supreme Court of Indiana.

Aug. 18, 1987.

Thomas G. Godfrey, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant for Robbery, a Class B felony, for which he received a sixteen (16) year sentence.

The facts are: On June 4, 1985, appellant, along with Anthony Neal and Tyrone Grant, visited the AJC Company in Anderson, Indiana, several times to ob-

serve the merchandise and number of people in the store. William McDaniel and Diane Fox were employed as store clerks. Appellant and Neal asked McDaniel questions about the merchandise. Then appellant pointed a gun at Fox while Neal held McDaniel at gunpoint. Appellant ordered everyone to lie on the floor. McDaniel, who was 72 at the time, was struck on the head with a gun.

The men took $300 in cash, some radios and McDaniel's watch, ring and wallet. They left the store and divided the goods among the three of them.

At the police station, Fox and McDaniel were shown a photographic array. Fox identified appellant and McDaniel identified Neal as the robbers. McDaniel did not identify appellant as one of the robbers. Appellant's first trial ended in a hung jury. Appellant was remanded to the custody of the sheriff and he filed a motion for speedy trial on August 9, 1985. His second trial was set for August 26, 1985.

On August 23, 1985, the State filed a motion for continuance so they could have more time to locate Neal and obtain his testimony. Their motion was granted and the second trial was reset for October 16, 1985.

Police contacted Anita Woods, who was Neal's girl friend and appellant's cousin, to question her about Neal's whereabouts. She told police that Neal was not in her home and allowed them to search her residence. Police found Neal hiding under a coat on her closet floor.

Woods testified at the second trial that Neal told her that he and appellant robbed the store and that appellant hit McDaniel on the head. The State also procured a statement from Neal in which he implicated appellant and Grant.

Grant testified that he was asked by appellant to check out the store before the robbery to see how many people were in it. Grant said he waited in the car as appellant and Neal robbed the store, and then he drove them to a house where he received $10.

■ Appellant argues that because the jury had not been given a sufficient amount of time for deliberation, the trial court erred in declaring a mistrial due to a hung jury.

At the end of the first trial, the jury deliberated for approximately seven hours and the foreman said that they were making no progress. He and the jury signified they did not believe that a unanimous opinion could be reached even if they were given more time. The trial judge then declared a mistrial pursuant to Ind.Code § 34–1–21–7.

It is within the trial court's discretion to determine whether the declaring of a mistrial due to a hung jury is appropriate under the circumstances of the case. *Young v. State* (1985), Ind., 482 N.E.2d 246. The determination of whether the jury has deliberated for a sufficient amount of time also is within the trial judge's discretion. *Id.*

In appellant's case, the record shows that the jury felt they would be unable to reach a verdict despite the amount of time they were given to deliberate. We find no abuse of the trial court's discretion in its decision to discharge the jury and declare a mistrial.

■ Appellant asserts that his second trial subjected him to double jeopardy. Indiana Code § 35–41–4–3(a)(2)(v) states that a prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense, *unless* the jury was unable to agree on a verdict. A new trial is not barred following a hung jury. *Young, supra* at 249.

Appellant cites several United States Supreme Court decisions to support his related argument that he was subjected to double jeopardy by having to undergo a second trial when the prosecution had attempted to strengthen its case by presenting additional evidence not presented at the first trial. Appellant extracted several quotations from cases in which the Supreme Court held that the double jeopardy clause forbids the prosecution from treating the

first trial as a dry run for the second prosecution.

These holdings were made in the context of cases in which the defendant had undergone a second trial after he was acquitted in the first one. Such a situation is distinguishable from appellant's case, which ended in a hung jury. The Supreme Court distinguished these two situations in *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, and specified that a deadlocked jury does not result in acquittal barring retrial under the double jeopardy clause. Appellant was not subjected to double jeopardy.

■ Appellant also argues that the trial court abused its discretion in granting the State's continuance, which was for the purpose of giving the State extra time to locate the codefendant. This extension of time, in appellant's view, was for the purpose of allowing the State extra time for trial preparation.

A motion for continuance based upon an alleged need to have time for trial preparation is addressed to the trial court's discretion. *Bryan v. State* (1982), Ind., 438 N.E.2d 709. The granting of continuances in order to allow more time for preparation generally is not favored without a showing of good cause, and only will be granted in furtherance of justice. *Id.* at 714. Whether good cause has been shown rests within the sound discretion of the trial judge and will be disturbed only if there is a clear showing of an abuse of discretion.

The absence of an essential witness through no fault of the State has been held by this Court to be good cause for extending the time period requirements for a speedy trial. *Fortson v. State* (1978), 269 Ind. 161, 379 N.E.2d 147.

The testimony of Neal was crucial to the State's case and his whereabouts were unknown. The trial was continued to a date within the seventy-day limit of Ind.R.Cr.P. 4(D). The trial court found that the State's need for the testimony of the missing witness was good cause for granting a continuance. We will not disturb its finding.

■ Next appellant argues that the court erred by permitting State's Exhibit No. 1, a photographic lineup, to be passed among the jurors. The photographic lineup was admitted, over defendant's objection, as the photographic array from which the victims made their initial identification of appellant and his codefendant.

The photographic lineup consisted of an album containing head shots of several black males. The photographs were inside transparent pockets and pieces of paper were placed on top of the pictures to cover the identification of each subject. In appellant's view, it was obvious that the photographs were police "mug shots" with information of previous arrests masked, and as such, the exhibit was unduly suggestive.

We have held that mug shots are prejudicial when they show the frontal and profile views with information regarding prior arrests. *Hunter v. State* (1986), Ind., 492 N.E.2d 1067. Such photographs are inadmissible when they imply that the defendant has a criminal record. *Head v. State* (1982), Ind., 443 N.E.2d 44. In order for a mug shot to be admissible, the State must show that the photograph is not unduly prejudicial and that it has substantial evidentiary value independent of other evidence. *Id.* at 58.

The information at the bottom of the pictures was completely covered and only frontal poses were included. There were no chains or police identification plates around the subjects' necks. This Court held in *Stark v. State* (1986), Ind., 489 N.E.2d 43, that photographs which had no name, identification number or indication of prior arrests did not fall within the classic definition of "mug shots". Therefore, the photographs of appellant were not unduly prejudicial.

The photographic lineup also had independent evidentiary value in that it corroborated the fact that prior to trial, the victim had identified appellant as one of the robbers. Because the photographs enabled the jury to resolve the issue of identity of the robbers, they had substantial independent probative value. *Hovis v. State* (1983), Ind., 455 N.E.2d 577; *Head, supra.*

Appellant also asserts that his conviction must be reversed for lack of sufficient evidence. The record reveals several incidents of contradictory testimony given by the perpetrators and by the witnesses. Appellant points out these inconsistencies in his brief and argues that they make the testimonies totally unworthy of belief and inherently unbelievable or unreliable.

Appellant is asking this Court to determine the credibility of the witnesses. We do not reweigh the evidence or judge the credibility of witnesses. *Herrod v. State* (1986), Ind., 491 N.E.2d 538. The uncorroborated testimony of a victim is sufficient to sustain a robbery conviction. *Townsend v. State* (1984), Ind., 460 N.E.2d 139. The facts in this case provide evidence of probative value from which a reasonable trier of fact could infer that the defendant was guilty beyond a reasonable doubt.

Appellant's final argument is that his sentence was excessive. The length of his sentence was based partially on the aggravating circumstance that McDaniel had been hit over the head with a gun.

McDaniel could not identify appellant as the man who hit him. Fox testified that she could not make a determination as to which of the two persons who came into the store struck McDaniel. Appellant argues that his sentence should not be enhanced by this act when it has not been proven that he did it.

The trial court stated that someone pistol-whipped McDaniel, and whether it was appellant or a cohort, the court would charge appellant with that fact and would include it as an aggravating circumstance.

This Court will not alter a sentence imposed by a trial judge if it is within statutory bounds unless it appears that the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Bryan, supra; Bray v. State* (1982), Ind., 430 N.E.2d 1162.

In appellant's case, one perpetrator hit McDaniel, and the evidence shows that appellant and Neal acted in concert to commit the robbery. An accomplice can be criminally held for everything done by his confederates, which was a probable and natural consequence of their common plan. *Harris v. State* (1981), Ind., 425 N.E.2d 154.

We held in *Hoskins v. State* (1982), Ind., 441 N.E.2d 419, that the trial court did not err in giving the defendant the maximum sentence despite the fact that it was not determined whether he was convicted as the accomplice or principal actor in the crime.

The trial court in appellant's case listed, as aggravating circumstances, appellant's recent violation of his parole, his extensive juvenile and adult criminal history, the seriousness of this offense, and the fact that McDaniel was injured. The trial court found no mitigating factors. As these factors are in accord with I.C. § 35–38–1–7, we do not find appellant's sixteen-year sentence to be unreasonable in light of the nature of the offense and character of the offender.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.