**Robert ROTH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49A04–8904–CR–120.

Court of Appeals of Indiana, Fourth District.

Feb. 19, 1990.

Rehearing Denied May 9, 1990.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendant–Appellant Robert Roth (Roth) appeals his convictions for sexual battery and criminal deviate conduct. IND.CODE 35–42–4–8; 35–42–4–2.

We reverse.

Because we reverse, we address only the issue of whether the trial court erred in permitting the State to cross-examine Roth concerning two prior misdemeanor convictions.

In May 1988, Roth entered the apartment of Candy Brooks (Brooks) while Brooks was asleep on her couch. Roth awakened Brooks, then ordered her to the floor. He then unbuttoned her shorts and removed her underwear. Roth fondled Brooks's breasts and genital area, then inserted his

fingers into her vagina. He repeated these acts over the course of several hours. At alternating points during this time, Roth threatened Brooks, asked her if she liked him, and asked her to hug him. Throughout this time Brooks conversed with Roth as though she was interested in him in order to gain information. In this way, Brooks obtained Roth's name and address. After making a date for the following evening, Roth voluntarily left the apartment. Brooks subsequently called the police, who apprehended Roth at his home.

Roth was charged with burglary, a class B felony; sexual battery, a class C felony; and criminal deviate conduct, a class A felony. Following a jury trial, Roth was convicted of sexual battery as a class D felony and criminal deviate conduct as a class B felony. He was sentenced to consecutive terms of four and twelve years, respectively. Roth appeals.

Roth maintains the trial court erred by permitting the State to cross-examine him about two prior misdemeanor convictions. Prior to trial, the trial court issued, with the State's consent, a motion in limine preventing the State from introducing evidence concerning Roth's previous criminal history. However, such information was elicited during questioning. During his direct examination, Roth testified:

Q. Robert, you heard that—you heard Candy testify that you were in her apartment for she wasn't sure how long, but that there were times in there that you were really acting crazy and of course committing these acts. Do you think that you are a crazy person, Robert?

A. I rather doubt it.

Q. Have you ever been treated for any kind of mental illness or anything like that?

A. No. Matter of fact, she was the one that told me that her mom kicked her out of the house because she was driving her crazy. And she kept asking me, do you think I'm crazy. And I said, well you are rath-er different I wouldn't exactly consider you crazy.

(R. 258) Thereafter, during cross-examination the State asked Roth to define "crazy". The following colloquy took place:

Q. What do you define as crazy?

A. What I would define as crazy?

Q. Yeah.

A. Someone who acts erratically and irrationally.

Q. And you've never done that?

A. Not that I recall.

(R. 259) Thereafter, over the defendant's timely objection, the State was permitted to inquire about Roth's prior convictions. The trial judge ruled the defense had opened the door when it discussed whether Roth believed he was crazy. The State asked the following questions during cross-examination:

Q. Are you the same Robert A. Roth who was convicted of Disorderly Conduct in January of 1982?

A. I don't recall that, but I suppose it's possible.

Q. And are you the same Robert A. Roth who was convicted of Battery in December of 1982?

A. Yes.

(R. 271)

Roth argues the State's inquiry concerning his prior convictions was improper and he was prejudiced thereby. In contrast, the State maintains Roth opened the door to such inquiry when he testified he was not "crazy" and when he defined that term.[1] The State maintains it was within its rights to inquire into the convictions because "disorderly conduct and battery convictions show a pattern of erratic or irrational behavior on the part of the Defendant, contrary to what he would have mislead the jury into believing." (Appellee's Brief, p. 8)

In *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, our supreme court limited the convictions for which a witness may be impeached for credibility to those

---

1. A defendant cannot open the door on cross-examination, thus Roth could not have opened the subject of his prior convictions by defining "crazy" during his cross-examination by the State.

involving infamous crimes (treason, murder, rape, arson, burglary, robbery, kidnapping, forgery and willful and corrupt perjury) or crimes involving dishonesty or false statement.[2] *See Wilson v. State* (1988), Ind.App., 521 N.E.2d 363, 367, *reh. denied, trans. denied.* However, a defendant may "open the door" and waive the *Ashton* rule by a direct examination question which invites an answer containing evidence of any criminal conviction. *Id.*

If the question on direct examination is precise and narrowly worded, the protection of the *Ashton* exclusionary rule can be forfeited only by an answer which tenders evidence of otherwise excluded criminal convictions. *Fultz v. State* (1982), Ind. App., 439 N.E.2d 659, 662 (defense counsel's question and defendant's response on direct examination regarding a prior shoplifting conviction did not open the door to evidence of other criminal convictions). Our supreme court has held evidence relied upon to open the door must leave the trier of fact with a false or misleading impression of the facts related. *Quarles v. State* (1986), Ind., 493 N.E.2d 1247, 1248 (defense counsel's questions on direct examination concerning defendant's prior conviction opened the door to cross-examination questions regarding details of the battery). In our review of trial court rulings admitting evidence, we will reverse only upon a showing of an abuse of discretion. *Fultz, supra.*

We find the trial court abused its discretion by permitting the evidence of Roth's prior convictions into evidence. Neither the questions propounded by defense counsel nor Roth's answers thereto opened the door to evidence of prior criminal convictions. Roth could only be cross-examined upon the subject matter raised in his direct examination. *See Fultz, supra;* Ind.Trial Rule 43(B). During direct examination, Roth merely stated he was not a crazy person and he had never been treated for mental illness. In making these statements, Roth did not mislead the jury or misrepresent facts. He did not discuss or even allude to his prior convictions. Roth's testimony did not place his character in issue. Rather, it is quite clear the direct examination of Roth was merely an attempt to refute Brooks's testimony Roth had acted "crazy". Roth at no time waived the protection of the exclusionary rule, and evidence of his prior convictions was inadmissible.

This error was not harmless. The evidence was conflicting on all points throughout the trial, and the issues were hotly contested. The judgment is not supported by overwhelming evidence.

Reversed and remanded for a new trial.

SHIELDS, P.J., concurs.

CHEZEM, P.J., concurs in result.

---

**2.** Roth's convictions for disorderly conduct and battery are inadmissible and excluded under

*Ashton, supra.*